UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THEATRICE ANN COATS,<br>*Plaintiff*,<br><br>v.<br><br>FAIRFIELD SURGERY CENTER, LLC,<br>*Defendant*. | )<br>)<br>) CASE NO. 3:21-cv-395 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

**RULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS ACTION** is before the court upon Defendant's Motion for Summary Judgment ("MSJ" or "Motion"). ECF No. 26. The court carefully has reviewed the Motion, Plaintiff's opposition thereto, ECF No. 29, Defendant's reply in support thereof, ECF No. 30, and the record in this case. For the reasons discussed herein, Defendant's Motion for Summary Judgment is **GRANTED**.

I. **BACKGROUND**

Plaintiff is a certified sterile processing technician in good standing with the licensing board. Dep. of Theatrice Coats 15:12–18:4, ECF No. 29-4 ("Pl.'s Dep."). Regrettably, Plaintiff's mother suffers from dementia. Pl.'s Rule 56(a)(2) Statement ¶ 6, ECF No 29-2. Plaintiff had been employed as a traveling nurse for at least seven years, but after her mother was diagnosed with dementia, Plaintiff made the decision to "move closer to home." Pl.'s Dep. 9:22–24. In making this transition, she applied for a position with Defendant, Fairfield Surgery Center, LLC ("Fairfield"). *Id.* at 30:23–24. Fairfield hired

1

her on as a sterile processing technician on April 11, 2016.[1]  *Id.* at 36:13.  Her duties included "[supplying] the O.R.s with sterile instrumentation" while adhering to guidelines.  *Id.* at 33:15–16.  The job posting for this position stated one such guideline: to "Maintain[] a safe, clean, and orderly environment" and to "adhere[] to all safety and infection control requirements."  MSJ, Ex. A, ECF No. 26-3 at 46 (copy of the job description which accompanied the job posting).  By the time she was employed by Fairfield, Plaintiff had more than twenty (20) years of experience and the expectations and responsibilities of her position at Fairfield were consistent with similar positions she had held at other medical facilities.  *See* Pl.'s Dep. 35:3–20.

Throughout her tenure at Fairfield, Plaintiff received multiple performance reviews, *see* Pl.'s Dep. 39:24–25, 46:6–90:25, and workplace infractions, MSJ, Ex. A, ECF No. 26-3 at 48–52.  The parties contest whether Plaintiff had knowledge of certain workplace infractions as well as the accuracy of some of Plaintiff's performance reviews and workplace infractions.

The first recorded infraction from 2017 is uncontested.  *See* Pl.s' Rule 56(a)(2) Statement ¶ 2, ECF No. 29-2.  In November 2017, Plaintiff, along with a few of her coworkers, was disciplined for violation of "infection control" by bringing food to Plaintiff's work area.  *Id.*  Plaintiff explained that "there was a party," and that she had only done as she was told, but she admitted that having food in her work area indeed was a violation of the protocol.  Pl.'s Dep. 51:6–17; 52:21–53:2.  In a separate instance in April 2018, Plaintiff was disciplined concerning her "professional behavior and verbal confrontations

---

[1] This is a different date than what was indicated on Plaintiff's complaint.  *See* Compl. ¶ 3 (listing a February start).  During her deposition, Plaintiff confirmed that her hire date was April 11, 2016, by referencing her employment records.  Pl.'s Dep. 36:13, ECF No. 29-4.

with co-workers and vendors." *Id.* at 53:6–21 (discussing that Plaintiff refused to sign the discipline form because she disagreed with the evaluation). Then, another part of the record states that Plaintiff was disciplined in December 2019 for a similar offense of having food within her work area. *Id.* at 69:14–70:1. However, Plaintiff vehemently denies both that she had food in her area during that time, and that she was notified of the disciplinary action against her. Compl. ¶ 18; *Pl.'s Dep.* 70:3–72:23. Yet another part of the record states that Fairfield had disciplined Plaintiff in May 2020 for having food items in her locker which attracted pests. Pl.'s Dep. 90:23–25. Plaintiff likewise contests both that she had food in her locker during this time, and that she was ever notified of this disciplinary record. *Id.* at 91:2–92:7.

As for her performance, Plaintiff was evaluated to be "highly competent and knowledgeable" in her role as a sterile processing technician. *Id.* at 48:17–19. Her evaluation also included that "she is well organized and keeps an immaculate work space." *Id.* at 48:20–22. Separately, the evaluations suggested that Plaintiff "learn how to manage negative communication and behavior" and "to follow facility policy in regards to cell phone usage and computer." *Id.* at 48:25–49:5; 50:5–10. Plaintiff agreed that her performance evaluation included such comments and that she knew about them, however, Plaintiff disagreed with contents of the evaluation. *Id.* at 50:5–22; 53:24–55:14 (discussing Plaintiff's disagreement with the evaluation and Plaintiff's refusal to sign the evaluation form).

Starting in January of 2019, Plaintiff started submitting paperwork for leave under the Family and Medical leave Act of 1993 ("FMLA"). *Id.* at 95:16–18. This was on a "just-in-case basis" because Plaintiff was concerned that she might have to take leave to tend

to her mother. *Id.* at 96:8–10. In response, Plaintiff's administrator at the time,[2] one Laurie Cornell, informed Plaintiff that Fairfield was "not covered by the FMLA because it employs less than 50 people" but that Plaintiff could take personal leave if she needed to take care of her mother. Def.'s Local Rule 56(a)(1) Statement ¶ 7, ECF No. 26-2; Pl.'s Dep. at 95:23–25. Plaintiff submitted FMLA paperwork again in January 2020. Def.'s Local Rule 56(a)(1) Statement ¶ 6, ECF No. 26-2. Despite these submissions, Plaintiff never took personal leave for her mother. *Id.* at ¶ 8.[3] At no point did anyone at Fairfield make negative comments to Plaintiff about her mother, her need to care for her mother, or her request for leave. *Id.* at ¶¶ 11, 12.

On or around early May,[4] Plaintiff notified her new administrator, Charles Wallace, that she "might have to take some time off" because her mother's daycare was closing due to COVID. *Pl.'s Dep.* 104:10–105:7. On May 18, 2020, Plaintiff was terminated by Fairfield. *Id.* at 91:2–5. Termination Summary, which contained records from the meeting, indicated that the reason for her termination was her continued violation of "infection control guidelines" by bringing food into her workspace. Fairfield Surgery Center, Record of Disciplinary Action 2, Ex. A, ECF No. 26-3. Plaintiff responded that she never received a copy of the Termination Summary but did confirm that she was notified as to the reason she was being terminated. *See* Pl.'s Dep. 90:12–22. She also

---

[2] Plaintiff explained that she did not have a supervisor, but instead an administrator and a director of nursing. *See* Pl.'s Dep. 43:8–10. The record indicates that administrators handled responsibilities in a capacity similar to that of a supervisor.

[3] The court notes that Plaintiff seems to contradict herself on this point. On one hand, Plaintiff responded "Admit" to paragraph 8 of Defendant's Rule 56(a)(1) which reads "Plaintiff did not take any personal leave to care for her mother." Pl.'s Rule 56(a)(2) Statement ¶ 8, ECF No. 29-2. On the other hand, Plaintiff claims that "Whether Plaintiff actually requested or took any time of[f] to care for her mother is a material fact that is in dispute." *Id.* at Disputed Issued of Material Fact ¶ 2. Plaintiff's deposition seems to suggest that she did not take time off, but it is similarly inconsistent. *See* Pl.'s Dep. 104:3–20.

[4] Neither party provides an exact date of Plaintiff's notice of the impending daycare closure. However, Plaintiff stated that she gave notice "a week or two" prior to her termination by Fairfield. *Id.* at 105:1–7.

4

asserted no knowledge of any food-related violations since her 2017 infraction and that the food items for which she was terminated were not hers.  *See id.* 73:10–23; 83:7–24.

Following her termination, Plaintiff filed a complaint with this court on March 23, 2021.  *See* Compl. ECF No. 1.  In her complaint, Plaintiff brings a single count under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 *et seq.*  *See id.*  Plaintiff argues that Defendant discriminated against her based on her relationship with her disabled mother ("associational disability discrimination") in violation of 42 U.S.C. § 12101(b)(4).  *See id.*  Plaintiff's argument is based on her belief that she was terminated for asking for time off to care for her mother.  Def.'s Local Rule 56(a)(1) Statement ¶ 9, ECF No. 26-2.  After filing an answer to the complaint, *see* Answer, ECF No. 9, Defendant filed the instant motion for summary judgment.  *See* MSJ, ECF No. 26.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*  The court must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  "Where an issue as to a material fact cannot be resolved without observation

of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At summary judgment, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact best left for determination by a jury at trial. *Anderson*, 477 U.S. at 249.

### III. **DISCUSSION**

Defendant moves for summary judgment on Plaintiff's claim, arguing first that Plaintiff cannot establish a prima facie case of associational disability discrimination under the ADA. *See* Def.'s Mem. of Law in Supp. of its Mot. for Summ. J. 7, ECF No. 26-1.

6

Defendant then argues, in the alternative, that even if Plaintiff could establish a prima facie case, she cannot prove pretext. *See id.* at 10–11. The court addresses each argument in turn.

### A. **Prima Facie Case**

In order "to sustain an 'associational discrimination' claim under the ADA, [Plaintiff] must first make out a prima facie case by establishing that 1) she was qualified for the job at the time of an adverse employment action; 2) she was subjected to adverse employment action; 3) she was known at the time to have a relative or associate with a disability; and 4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016) (reviewing these four elements on an appeal of summary judgment decision).

Specifically for the fourth element, the Second Circuit has instructed of three situations or theories that would give rise to such an inference:

[1] "expense," referring to situations in which employee suffers adverse action because of her association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly, [2] "disability," referring to when an employer fears that the employee may contract or is genetically predisposed to developing the disability of the person with whom she is associated; and [3] "distraction," referring to situations where refers to circumstances where the employer fears that the employee will be inattentive at work due to the disability of the disabled person. *Id.*

Distraction is clearly the only theory that is pertinent to this case. Plaintiff's single claim in the complaint alleges that Defendant "terminated Plaintiff because she requested a leave of absence to care for her disabled mother and it assumed or believed Plaintiff's need to care for her disabled mother would be a distraction from Plaintiff's ability to perform her job." Compl. ¶ 18.

To sustain a claim under the "distraction" theory, a plaintiff must establish that the "determining factor" behind an adverse employment action was the employer's concerns over the plaintiff's distraction at work due to the disability of a relative or an associate. *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 470 (2d Cir. 2019); *see Graziadio*, 817 F.3d at 432–33 (dismissing the plaintiff-appellant's ADA claim for failing to produce evidence that show distraction); *Zako v. Encompass Digit. Media, Inc.*, No. 3:19-cv-844(MPS), 2020 WL 3542323, at * 10 (D. Conn. June 30, 2020) (same).

Defendant asserts that Plaintiff has failed to sustain her case. The court agrees. The crux of Plaintiff's argument boils down to the "temporal proximity" between the plaintiff's most recent announcement that her mother's daycare facility is closing due to the COVID pandemic and the defendant's decision to terminate Plaintiff's employment thereafter. Pl.'s Mem. of Law in Supp. of Obj. to Def.'s Mot. for Summ. J. 6, ECF No. 29-1 [hereinafter "Pl.'s Obj"]; *see* Compl. ¶ 18. Under Plaintiff's theory, this temporal proximity suggests that Defendant's stated reason for termination (the food-related infractions) is a pretext, and that, in truth, Plaintiff was fired for requesting time off to tend to her mother. In advancing this claim, Plaintiff argues that there are three disputed questions of material fact: 1) the extent to which others had access to Plaintiff's workspace; 2) whether Plaintiff actually requested or took any time off to care for her

mother; and 3) Wallace's motivation in terminating Plaintiff.  Pl.'s Rule 56(a)(2) Statement p.2 at ¶¶ 1–3, ECF No. 29-2.

Plaintiff is mistaken in her understanding of Defendant's liability under the ADA. The court finds that none of the disputed questions of fact is material because a jury's determination would not alter the outcome of the case.

The court first looks to the nature of Plaintiff's announcement itself.  Plaintiff explained that only "a week or two" after she announced to Wallace of her potential need to take personal leave, she was terminated.  Pl.'s Dep. 105:1–7.  When asked to elaborate, Plaintiff conceded that Wallace had not made comments that made her believe that she was being terminated due to her request for personal time off.  *Id.* at 105:14. Instead, she emphasized how, following her announcement, she had been terminated on the Friday of the week before Fairfield was going back to operating "full time."  *Id.* 105:14–20.  Plaintiff concluded "it appears to me that that's why they let me go, because I wouldn't have been able to come to work."  *Id.* 105:21–23.  Plaintiff's claim, in her own words, is that Fairfield terminated her employment because her employers feared that she would not be able to report into work.  This argument is almost identical to the argument that the Second Circuit rejected in *Graziadio*.  *See* 817 F.3d at 422.  The Second Circuit affirmed the dismissal of the appellant-plaintiff's associational discrimination claim precisely because the plaintiff had "not presented evidence that she was fired because her employer suspected distraction or concern for [plaintiff's son] would cause her to perform her wok inadequately; rather she ha[d] presented evidence that she was terminated because her employer felt she had taken too much leave *from work* to care for her sons."

9

*Id.* (emphasis added) (contrasting two district court cases: one in which the plaintiff was distracted *at* work and another in which the plaintiff *missed* work).

Plaintiff does not speak to her inattentiveness or distraction at work, and, in fact, the record is sparse regarding any distraction at all. Plaintiff's disciplinary record at the workplace, contested or not, does not speak to distraction or inattentiveness. *See, e.g.*, Pl.'s Dep. 50:25–51:14 (discussing the infraction from November 2017 regarding having food in the Clean Room); 69:13–74:7 (discussing the infraction from December 2019 about another instance of food being found in the Clean Room, although Plaintiff denied prior knowledge and legitimacy of the infraction). Similarly, Plaintiff's performance evaluation does not indicate that Defendant believed Plaintiff was distracted. *See, e.g.*, *id.* at 48:20–22 (reviewing Plaintiff's performance evaluation from August of 2018 in which Plaintiff was noted for keeping an "immaculate workspace"); 54:22–58:23 (reviewing Plaintiff's performance from 2018 in reference to communicating with vendors).[5] The record does not suggest examples, specific or general, of Plaintiff's distraction or inattentiveness, nor does Plaintiff argue such.

Taking Plaintiff's argument one step further, the court finds that the record does not suggest that Defendant feared Plaintiff would be distracted *because* she had to tend to her mother. *See Kelleher*, 939 F.3d at 470 (ruling that the distraction theory requires the distraction resulting from the disabled relative must be the determinative factor). When Plaintiff first submitted FMLA leave request in January of 2019, Pl.'s Dep. 95:16–96:10; Pl.'s Obj. 2, she was told by her administrator, Laurie Cornell, that Fairfield was

---

[5] The one possible exception to this would be the portion of Plaintiff's performance evaluation which referenced her cell phone and computer usage. *See* Pl.'s Dep. 50:1–25. Although Plaintiff may have been distracted at work due to her cell phone and computer usage, the record does not clearly state as such, nor does Plaintiff argue as such.

subject to FMLA because it did not hire requisite number of employees. *See* Pl.'s Dep. 95:16–96:7. In addition, Plaintiff was told that she could take personal leave as she found it necessary. Plaintiff's interaction with Wallace on the issue of leave, as admitted by Plaintiff herself, was largely positive. *See, e.g., id.* at 94:18–23 (Plaintiff stating that Wallace responded "No, problem" when asked if she could leave early to pick up her mother); 97:11–15 (Plaintiff agreeing that Wallace had told her "[i]f you need time off, we'll work with you"). In the few occasions that Plaintiff sought permission to leave work early, Wallace did not comment or react in such a way as to demonstrate FHA's fear of Plaintiff's distraction. No one at Fairfield made disparaging comments about Plaintiff's performance or attitude at work due to having to take care of her mother. Pl.'s Rule 56(a)(2) Statement ¶¶ 11, 12, ECF No 29-2.

By asking for an extended personal leave, Plaintiff was asking Fairfield to provide "reasonable accommodations" for her to tend to her mother. *Graziadio*, 817 F.3d at 433 (citing *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 337 (7th Cir. 2012)). Employers are not required to accommodate an employee because their association with a disabled person. *Id.* As a result, the court finds that there are no disputed issues of material fact. All the supposed questions of fact presented by Plaintiff are directed toward the argument that Plaintiff was terminated for asking for extended personal leave, under the pretense that she was terminated for having food in her workspace. Even if the three questions are resolved in Plaintiff's favor, she could not have established a prima facie claim. Plaintiff's argument addresses the lack of reasonable accommodations—not at issue in this case—rather than associational disability discrimination.

### B. <u>Pretext</u>

Under the *McDonnell-Douglas* framework, Plaintiff first must establish a prima facie case of discrimination before the burden is shifted to the defendant to provide a nondiscriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000). Only then may Plaintiff argue that the defendant's stated reason is pretextual. *See id.* at 143; *see also Carmichael v. Advanced Nursing & Rehab. Ctr. of New Haven, LLC.*, No. 3:19cv908(JBA), 2021 WL 735878, at *7 (D. Conn. Feb. 24, 2021) (citing to *Reeves*, 530 U.S. at 143).

Having ruled that Plaintiff failed to set forth a prima facie case, the court finds it unnecessary to analyze the argument put forth regarding any potential pretext.

### IV. <u>CONCLUSION</u>

For the reasons discussed herein, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is granted.

The Clerk of Court is asked, respectfully, to terminate this case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 2nd day of October, 2023.

                                                   _/s/_
                                       OMAR A. WILLIAMS
                                       UNITED STATES DISTRICT JUDGE